O

# United States District Court
# Central District of California

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAUL CHEVROLET, INC. dba CARDINALEWAY VOLKSWAGEN; JOEL EARL; JOHN QUINONES; JAMES AUSTIN; SALVADOR BARAJAS; TERRY GUINN; and DOES 1-10, inclusive, <br><br> Defendants. | Case № 5:15-cv-00505-ODW (SPx) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION [36]** |

## I. INTRODUCTION

Defendant Saul Chevrolet, Inc. dba CardinaleWay Volkswagen ("CardinaleWay") moves to compel Plaintiff Volkswagen Group of America, Inc. ("Volkswagen") to arbitrate its claims. In the alternative, CardinaleWay moves to stay the case pending appeal from this Order. For the reasons discussed below, the

Court **DENIES** CardinaleWay's Motion in its entirety.[1] (ECF No. 36.)

## II. FACTUAL BACKGROUND

This action arises out of an automobile dealer's submission of allegedly fraudulent warranty repair timesheets to the manufacturer. Volkswagen (the manufacturer) alleges that repair technicians employed by CardinaleWay (the dealer) submitted daily time sheets that "consistently ha[d] overlapping and concurrent time punches [and] repeating minutes," recorded themselves performing repairs during their lunch breaks, and recorded "total time exceed[ing] 24 hours." (Compl. ¶¶ 21–22.) Volkswagen asserts the following claims: (1) Breach of Contract; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Fraud; (4) Intentional Misrepresentation; (5) Concealment; (6) Violation of California Business and Professions Code § 17200 et seq.; and (7) Violation of Vehicle Code § 11705(A)(14).

Article 13(1) of the Volkswagen Dealer Agreement provides:

> [Volkswagen] and [CardinaleWay] agree that it is in their mutual best interests to attempt to resolve certain controversies first through arbitration. [Volkswagen] and [CardinaleWay] therefore agree that the dispute resolution process outlined in this Article shall be used before seeking legal redress in a court of law or before an administrative agency, for all disputes arising under the following: Article 9(3) (Warranty Procedures) . . . Article 14 (Termination) . . . .

(Mot., Decl. Kristovich ¶ 2, Ex. A at 15.)

The Agreement further provides that "a dispute arising in connection with this Agreement" must be submitted to non-binding arbitration upon request by either the manufacturer or the dealer, or to binding arbitration upon request by the dealer only. (*Id.*)

CardinaleWay demanded that Volkswagen dismiss its Complaint based on the foregoing arbitration provisions. (*Id.* ¶ 3, Ex. B.) Volkswagen refused. (*Id.* ¶ 4, Ex. C.) CardinaleWay then explicitly requested that Volkswagen arbitrate the dispute.

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); L.R. 7-15.

(*Id.* ¶ 5, Ex. D.) It is unclear if CardinaleWay was attempting to invoke the binding or non-binding arbitration provision. (*Id.*) Regardless, Volkswagen again refused. (*Id.* ¶ 6, Ex. E.) CardinaleWay then moved to compel arbitration. (ECF No. 36.) Volkswagen timely opposed, and CardinaleWay timely replied. (ECF Nos. 37, 38.) The Motion is now before the Court for consideration.

### III. LEGAL STANDARD

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Generally, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly interpreted § 2 as reflecting "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Thus, "[i]t requires courts to enforce agreements to arbitrate according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citation omitted). The burden lies with the party claiming that such a contrary congressional command exists "to show that Congress intended to preclude a waiver of a judicial forum" for their claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

### IV. DISCUSSION

Volkswagen does not dispute the existence or validity of the arbitration agreement itself, but instead argues that the Motor Vehicle Franchise Contract Arbitration Fairness Act ("AFA") precludes its enforcement. Volkswagen contends that the AFA requires not only a valid arbitration agreement, but that *both* parties

agree to arbitrate the dispute *after* the dispute arises. Because it declined to arbitrate this dispute after it arose, Volkswagen argues that it cannot be compelled into arbitration. (Opp'n at 6–16.)

CardinaleWay responds that the AFA was intended to protect only dealers, not manufacturers, from unfair arbitration agreements. Thus, they argue, it would frustrate the purpose of the AFA to prohibit arbitration where the dealer wishes to arbitrate a dispute pursuant to an otherwise valid arbitration agreement. (Mot. at 4–7.) CardinaleWay also argues that Volkswagen waived the AFA's mutual consent requirement by not expressly including that requirement in the contract. (Mot. at 6.) The Court disagrees with CardinaleWay on both counts.

**A.     The AFA's Consent Requirement**

The scope of the AFA's consent requirement presents a pure issue of statutory interpretation. "The first step [in interpreting a statute] 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "'[U]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) (citation omitted). However, courts must also "read the words in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (citation and quotation marks omitted). Because the court must "assume the legislative purpose is expressed by the ordinary meaning of the words used," *United States v. Hunter*, 101 F.3d 82, 84 (9th Cir. 1996), "[t]he inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent," *Barnhart*, 534 U.S. at 450 (internal quotation marks omitted).

The AFA provides in pertinent part: "Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises *all parties* to such

controversy consent in writing to use arbitration to settle such controversy." 15 U.S.C. § 1226(a)(2) (emphasis added).

The Court finds that the term "all parties" as applied here plainly and unambiguously includes Volkswagen. It is undisputed that the underlying contract is a "motor vehicle franchise contract," and that this action is a "controversy" that "aris[es] out of or relat[es] to such contract." *Id.* It is also undisputed that Volkswagen is a party to both the contract and the controversy. It would be absurd, then, to interpret the term "all parties to such controversy" as excluding Volkswagen—or, in other words, to interpret the term "all parties" to not mean *all* parties, but only *some* parties. If Congress intended to bestow on only the dealer the power to refuse arbitration after the dispute arose, it could easily have done so by replacing the term "all parties to [the] controversy" with "the automobile dealer." *See id.* § 1221(c) (defining "automobile dealer" within the AFA).

Nor does interpreting the term "all parties" to include the manufacturer lead to any incoherence or inconsistency in the statutory scheme. The text of § 1226 makes clear that its purpose (contrary to CardinaleWay's assertion) is to allow parties to *opt out* of arbitration, not to force parties *into* arbitration. This purpose is not frustrated by interpreting the statute to require both the manufacturer's consent and the dealer's consent to arbitrate after the dispute arises. CardinaleWay does not point to any other part of the AFA with which this interpretation would conflict.

Finally, this is not the "rare and exceptional" situation where legislative history can overcome plain and unambiguous statutory language. *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008). While the Senate Committee Report makes clear that the AFA was intended to "level the playing field" between automobile manufacturers and automobile dealers, it also makes clear that Congress sought to achieve this by ensuring that a dispute between them could be resolved in court (or through state administrative procedures) instead of through a secretive and one-sided arbitration process that is inherently loaded in the manufacturer's favor. *See generally*

S. Rep. No. 107-266 (2002). The Court's interpretation of the statutory text does not conflict with this goal or the means of achieving that goal, and indeed is the only way to make sense of the Report's repeated insistence, "consistent with the statutory text, that '*both parties*' must consent to arbitration." *Volkswagen of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 975 (7th Cir. 2007) (emphasis in original); *see also* S. Rep. No. 107-266, at 2, 8, 9, 10.

Whether or not a mutual consent requirement (instead of a one-sided consent requirement) is the best way of achieving the AFA's goal is not a question for the courts. "It is quite possible that a bill that [enacted only a one-sided consent provision] would not have survived the legislative process. The deals brokered during a Committee markup, on the floor of the two Houses, during a joint House and Senate Conference, or in negotiations with the President are not for [the courts] to judge or second-guess." *Barnhart*, 534 U.S. at 461.

**B.    Waiver**

CardinaleWay's argument that Volkswagen waived its right to require mutual consent by not expressly writing that requirement into the contract borders on frivolous. (Mot. at 6.) Nothing in the AFA conditions the mutual consent requirement on it being written into the contract, and thus there is no basis for finding that Volkswagen waived the requirement by not doing so. Indeed, the requirement was intended to give all parties the choice of litigating their dispute regardless of whatever pre-dispute arbitration agreement existed. *See generally* S. Rep. No. 107-266. This purpose would be completely defeated if the requirement could be waived by not including it in that very same agreement. It makes no difference under the statute that the party seeking to avoid arbitration is supposedly the "stronger" party that drafted the arbitration provision.

**C.    Stay Pending Appeal**

CardinaleWay requests that the Court stay the action pending appeal of this Order. The Court finds that the relevant factors weigh against staying the matter.

"An appeal may be taken from an order denying a petition . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). In the Ninth Circuit, the district court may, but is not required, to stay the action pending such appeal. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). The court weighs the following factors in deciding whether or not to impose a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Ferguson v. Corinthian Colls.*, No. SACV 11-0127 DOC, 2012 WL 27622, at *2 (C.D. Cal. Jan. 5, 2012) (applying *Hilton* factors where party requested stay pending appeal of an order declining to compel arbitration).

### 1. Likelihood of Success on the Merits

CardinaleWay contends that this factor weighs heavily in favor of a stay because the scope of the AFA's mutual consent requirement is an issue of first impression in the Ninth Circuit. (Reply at 9.) The Court disagrees that the novelty of the question on appeal controls this factor. Excluding from consideration the appellant's likelihood of success would run counter to the Supreme Court's multi-factor test in *Hilton*. 481 U.S. at 776. And while the Ninth Circuit suggested in *Britton* that a matter presenting a "substantial question" could qualify for a stay pending appeal, 916 F.2d at 1412, that does not mean that an appellant's likelihood of success on appeal is irrelevant.[2] It is difficult to conceive of an appeal presenting a "substantial question" where, for example, the argument is novel but completely

---

[2] The Court also notes that, contrary to CardinaleWay's assertion, *Britton* did not adopt the holding in *C.B.S. Emps. Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 716 F. Supp. 307, 310 (W.D. Tenn. 1989) that this factor does not consider the appellant's "mathematical probability of success." Rather, *Britton* cited that case as an example of district courts applying a discretionary test rather than a mandatory rule in deciding whether to stay the case pending appeal. 916 F.2d at 1412.

frivolous.

Here, the questions presented by CardinaleWay are not close calls. As discussed, the text of the mutual consent requirement in the AFA is clear and unambiguous, and the legislative history does not override (or even conflict with) the clear statutory language. CardinaleWay's alternative suggestion that Volkswagen waived its right to arbitration is not only meritless, but borders on frivolous. The Court thus cannot conclude that CardinaleWay has any likelihood of success on the merits, or will even raise "substantial question[s]" on appeal. Consequently, this factor clearly weighs against staying the matter.

### 2. Irreparable Injury to CardinaleWay

The Court recognizes that "the advantages of arbitration—speed and economy—are lost forever" when a party that is entitled to arbitrate a claim is forced to spend money litigating the case pending appeal of the denial to compel arbitration. *Cf. Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984); *see also Ferguson*, 2012 WL 27622, at *3. But it also follows that these advantages are not lost to a party that was never entitled to arbitrate the claim in the first place. Thus, this factor must, to some extent, take into account the appellant's likelihood of success on appeal. Here, the Court has determined that CardinaleWay is unlikely to prevail on appeal, resulting in a low likelihood of CardinaleWay being deprived the benefits of an arbitration proceeding to which they are ultimately entitled. So while this factor does favor a stay pending appeal, it carries relatively little weight.

### 3. Injury to Other Parties

A stay of the proceedings would prejudice both Volkswagen and the other defendants in this action. Generally, a civil plaintiff has an interest in having their case resolved quickly. *See Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989) ("'Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.'" (citation omitted)). Contrary to CardinaleWay's assertion,

Volkswagen's "contractual right to investigate, inspect, and charge back" objectionable charges is meaningless if it is prevented from enforcing that right against an uncooperative party. (Reply at 10.) Moreover, the individual defendants in this action—who apparently are no longer employed by CardinaleWay and are represented by separate counsel—may need discovery from CardinaleWay to defend themselves.[3] Thus, this factor weighs against a stay.

### 4. Public Interest

This fourth and final factor also does not favor a stay. The Court recognizes the strong federal policy favoring arbitration, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, and thus there is arguably a public interest in staying the case pending a final determination of whether or not this is an arbitrable controversy. *See Ferguson*, 2012 WL 27622, at *4–5. However, there is a countervailing policy disfavoring the enforcement of arbitration agreements in automobile franchise contracts. 15 U.S.C. § 1226(a)(2); *see generally* S. Rep. No. 107-266. The public also has an interest in private parties being permitted to expeditiously investigate and pursue claims of fraud and unfair business practices. *See Ferguson*, 2012 WL 27622, at *5. The year-plus stay needed to perfect an appeal from this Order would (as previously noted) potentially result in the loss of documents, relocation of witnesses, and fading of memories that would make it significantly more difficult for Volkswagen to prosecute its case against the alleged offenders. It would undermine public confidence in the judicial system if claims were permitted to go stale pending the completion of an appeal that has at best a borderline chance of success. Thus, this factor is either

---

[3] CardinaleWay also moves the Court to compel the individual defendants into arbitration. Because the Court declines to compel Volkswagen to arbitrate the dispute, there is no basis for compelling the individual defendants into arbitration either. However, the Court notes that even if it did grant this Motion as to Volkswagen, it would be unable to compel the individual defendants into arbitration because the AFA requires that "all parties *to the controversy*" (not just the contract) agree to arbitration after the dispute arises. 15 U.S.C. § 1226(a)(2) (emphasis added). This presents a further reason why the litigation as to the individual defendants would need to continue regardless of the outcome of CardinaleWay's appeal.

neutral or slightly disfavors a stay.

On balance, the Court finds that the *Hilton* factors weigh against staying the matter while CardinaleWay pursues an appeal.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** CardinaleWay's Motion in its entirety. (ECF No. 36.)

**IT IS SO ORDERED.**

September 25, 2015

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**